UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

W.B., et al.,

    Plaintiffs,

v.                                           Case No.: 3:21-cv-771-MMH-PDB

SIMONE MARSTILLER, in her official
capacity as Secretary for the FLORIDA
AGENCY FOR HEALTH CARE
ADMINISTRATION,

    Defendant.
_____/

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Plaintiffs have shown that they meet the requirements for class certification. First, as set forth below, the named Plaintiffs have sufficient standing. Contrary to Defendant's arguments, Fed. R. Civ. P. 23(b)(2) does not require Plaintiffs to show that all or the majority of the putative class members possess identical Article III standing. Instead, Plaintiffs need only establish that all class members are subject to the same illegal policies that cause Plaintiffs' injuries, which they have done. Moreover, they have shown that class certification is necessary to remedy Defendant's Medicaid violations.

**I.   THE NAMED PLAINTIFFS' HAVE STANDING BUT ASSUMING THEIR CLAIM IS MOOT, THE VOLUNTARY CESSATION OR INHERENTLY TRANSITORY EXCEPTIONS APPLY**

**A. The Named Plaintiffs' Claims Are Not Moot.**

"[P]rior to the certification of a class…the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *Murray v. Auslander*, 244 F.3d 807, 810 (11th Cir. 2001).[1] A case becomes moot only "when events subsequent to the commencement of a lawsuit creates a situation in which the court can no longer give the plaintiff meaningful relief." *Jews for Jesus, Inc. v. Hillsborough County Aviation Auth.*, 162 F. 3d 627, 629 (11th Cir. 1998).

As will be further detailed in Plaintiffs' response to Defendant's Motion to Dismiss, Plaintiffs' single count alleging that Defendant's medical necessity standard violates EPSDT is not moot. Defendant admits that she uses her medical necessity standard to authorize Medicaid services for children under 21. (Dkt. 47 at 7-8). Plaintiffs are both under age 21, are enrolled in Florida's Medicaid program,

---

[1] In their response, Defendant's cite two cases that do not apply here. Relying on *TransUnion Lmtd. Liab. Corp. v. Ramirez*, 141 U.S. 2190 (2021), Defendant asserts that "every class member individually must demonstrate standing." (Dkt. 48 at 17). In that case, however, the Court actually held that "[e]very class member must have Article III standing in order to recover *individual damages.*" *Id.* at 2208 (emphasis added). Here, the named Plaintiffs seek to certify a class under Fed. R. Civ. P. 23(b)(2) and have asserted no claim for individual damages. *Cordoba v. DIRECTV, Ltd. Liab. Corp.,* 942 F.3d 1259 (11th Cir. 2019), which Defendant cites for the same proposition is similarly inapposite, as it also concerns Fed. R. Civ. P. 23(b)(3). *Id.* at 1277.

2

and especially because of their medical complexity, will regularly request Medicaid services and therefore remain subject to Defendant's medical necessity standard which they allege is illegal. (Dkt. 1, ¶¶ 4, 14, 37-56, 99-100, 130, 133).

In *Fla. Pediatric Soc'y v. Benson*, No. 05-CIV-23037, 2009 WL 10668660, *3 (S.D. Fla. Sept. 30, 2009), the court considered whether the named plaintiffs who challenged the failure of the state to provide Medicaid services class wide with reasonable promptness, had requisite standing. The court found they did possess standing, because they alleged future harm based on past inconsistent care from the Medicaid program. *Id.*; *see also M.R. v. Bd. of Sch. Comm'rs of Mobile Cty.*, 286 F.R.D. 510, 516 (S.D. Ala. 2012) (plaintiffs had standing where it was "reasonable to conclude that…named plaintiffs are 'likely to have another encounter with government officials of the kind which precipitated the complained of act' "); *31 Foster Children v. Bush*, 329 F.3d 1255, 1266 (being subject to an allegedly illegal policy may confer standing because where "…the threatened acts that will cause injury are authorized or part of a policy, it is significantly more likely that the injury will occur again.").

Here, it is "reasonable to conclude" that Defendant's policy will again result in the named Plaintiffs' being unable to access medically necessary services which "is enough…to confer standing in the undemanding Article III sense." *Fla. Pediatric Soc'y*, 2009 WL 10668660 at *3; *31 Foster Children*, 329 F.3d at 1266;

*M.R.*, 286 F.R.D. at 515. Moreover, a declaratory judgment finding Defendant's standard unlawful and enjoining Defendant to adopt a standard that comports with EPSDT will provide named Plaintiffs "meaningful relief" because it will ensure their future service requests are evaluated correctly. *Jews for Jesus, Inc.*, 633 F.3d at 1308.

### B. Even if Plaintiffs' claims are moot, the voluntary cessation exception applies.

Even if their claims are moot, Plaintiffs meet the voluntary cessation exception to mootness; of which there are three critical factors for defendant governmental actors:

> (1) "whether cessation of the challenged action was unambiguous; (2) whether the cessation or change in government policy was the product of substantial deliberation or just an attempt to manipulate jurisdiction; and (3) whether the government has consistently applied a new policy or adhered to a new course of conduct."

*A.R. v. Dudek*, No. 12-CIV-60460, 2014 WL 11531370 *10 (S.D. Fla. 2013) (quoting *Rich v. Sec'y Fla. Dep't of Corr.*, 716 F.3d 525, 531-32 (11th Cir. 2013)).

In *A.R.*, the named plaintiffs, a group of medically fragile children, filed a multi-count class action complaint challenging Florida's policies and practices which they alleged resulted in their unnecessary institutionalization in lieu of home care. *Id.* at *1-2. After suit was initiated, the defendant, the Agency for Health Care Administration (the Agency) provided certain institutionalized plaintiffs care in the

4

community and amended some policies plaintiffs alleged caused their actual institutionalization or risk of institutionalization. *Id.* at *11-12. Despite the Agency's actions, the court found that plaintiffs met the voluntary cessation exception because the Agency had not unambiguously terminated the offending conduct contained in the Agency's medically necessity definition set forth in Rule 59G-1.010…" which permeated the plaintiffs' claims. *Id.* at 12.[2]

Here, Defendant has taken no further steps to remedy concerns over the legality of her standard. Defendant's authorization of W.B. and A.W.'s services occurred only after Plaintiffs filed suit and requested preliminary injunctive relief. (Dkt. 48-2; 48-3). Until Defendant formally adopts a new, lawful standard for evaluating Medicaid services for children under age 21, she cannot demonstrate that cessation of the challenged action is unambiguous, and the "relief" of providing services to W.B. and A.W. has eradicated the effects of her unlawful standard which, in large part, turns on Fla. Admin. Code R. 59G-1.010. *See A.R.*, 2014 WL 11531370 at *12; *see also*, *Fla. Pediatric Soc'y*, 2009 WL 10668660 at

---

[2] In a later iteration of *A.R., C.V., by and through Wahlquist v. Senior*, 2017 WL 2730397, *3 & 7 (S.D. Fla., March 22, 2017), the Court ultimately dismissed plaintiffs' claims as moot only after the Agency formally adopted a very narrow exception to Fla. Admin. Code R. 59G-1.010 exempting children under 21 seeking private duty nursing services from consideration of whether the service was for the convenience of the enrollee or caretaker. Presumably, the Agency carved out this exception because the district court may have otherwise decided the rule violated EPSDT.

5

\*3 (provision of Medicaid services after filing of the complaint was a voluntary cessation of the alleged wrongful behavior).

### C. The claim is inherently transitory, so certification of the class may "relate back" to the named Plaintiffs' standing at the time they filed their Complaint.

More fundamentally, even assuming the named Plaintiffs' claims are moot, the merits of this putative class action are preserved under the "relation back" doctrine. This longstanding rule allows certification to "relate back" to the filing of the complaint where the plaintiffs have diligently sought class certification and their inherently transitory claims become moot before a court can act. *See Stein v. Buccaneers Ltd. Partnership*, 772 F.3d 698, 705 (11th Cir. 2014); *see also Wilson v. Gordon,* 822 F.3d 934, 945 (6th Cir. 2016) (applying "relation back" in a challenge to Medicaid application processing delays, the court held that "the *uncertainty* about how long an injury caused by ongoing conduct will persist can also render a claim inherently transitory.") (emphasis added).

In *Bellin v. Zucker*, 6 F.4th 463, 473-474 (2d Cir. 2021), the court affirmed a decision that the named plaintiff's procedural due process claims were not moot even though, after initiating suit to challenge a statutory scheme preventing her from accessing all medically necessary personal care covered by Medicaid, the state approved plaintiff for 24-hour, live in care. The court reasoned that a class action claim is "inherently transitory" and, therefore, not moot where (1) "there is

6

"a 'significant possibility' that any plaintiff who brings the claims…[plaintiff] asserts…would have her request…resolved before a decision could be made" and "(2) there will be a constant class of persons suffering the deprivation complained of in the complaint." *Id.* (citing *Salazar v. King*, 822 F.3d 61, 73 (2d Cir. 2016)). Further, the Second Circuit acknowledged that some plaintiffs' claims might not be resolved and become moot, because the defendant might deny their request. However, the "inherently transitory" exception still applied because "a plaintiff need not show that every hypothetical plaintiff's claim faces certain dismissal" to invoke the exception. *Id.* at 474.

    Like in *Bellin*, while W.B. and A.W. may have received the medically necessary Medicaid services they sought after they filed suit, it was uncertain whether these particular injuries would persist; that is, whether Defendant would take action to resolve their requested Medicaid services in their favor or continue to deny the services. (Dkt.1; 48-2; 48-3); *Id.* at 473. Coupling that uncertainty with the fact that four previous state court decisions found Defendant's standard violated the EPSDT rights of individual Medicaid enrolled children (Dkt. 1, ¶¶45-47, 53) and Defendant's admission their medical necessity standard applies to all Medicaid enrolled children (Dkt. 9-3 at 37), there is sufficient evidence to conclude there is and will continue to be a "constant class" of present and future children harmed by Defendant's policies, and it is uncertain whether Defendant

7

will resolve those claims as they did with W.B. and A.W. or if the violation will persist. *Id.* at 474. Consequently, the inherently transitory doctrine applies.

## II. PLAINTIFFS' CLASS IS ASCERTAINABLE

Defendant states that Plaintiffs' proposed class is not ascertainable because it is overbroad and there is no meaningful way to identify present and future children harmed by Defendant's unlawful medical necessity standard. (Dkt. 48 at 21). Defendant's argument misconstrues the standard for ascertainability which, as affirmed recently by the Eleventh Circuit, is met where the class "is adequately defined such that its membership is capable of determination…." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021).[3]

Relatedly, while future class members cannot, of course, be ascertained at the moment class is certified, "[c]ourts frequently certify classes that include individuals who will be affected by a practice in the future" and that, "at the exact moment that the Court certifies this class the identity of individuals who will in the future… [be subject to the unlawful policies of Defendant]…is immaterial." *J.M. v. Crittenden*, 337 F.R.D. 434, 446 (N.D. Ga. 2019). In *Underwood v. Manfre*, No. 3:13-CV-192, 2014 WL 67644 *6 (M.D. Fla., Jan. 8, 2014), this Court found:

> "…the Rule does not require…that the party opposing the class ... act directly against each member of the class. The key

---

[3] Defendant's reference to *Conigliaro v. Norwegian Cruise Line Ltd.*, No. 05-21584-CIV, 2006 WL 7346844 (S.D. Fla., Sept. 1, 2006) is inapplicable. The court in *Conigliaro* relies on "administrative feasibility" to reach its conclusion about ascertainability which the Circuit has since expressly overruled particularly as to 23(b)(2) classes. *Id.* at 2; *Cherry*, 986 F.3d at 1304.

8

>is whether his actions would affect all persons similarly situated so that his acts apply generally to the whole class…[a]s such…[a]ll the class members need not be aggrieved by or desire to challenge the defendant's conduct in order for one or more of them to seek relief under Rule 23(b)(2)." (internal citations omitted).

Plaintiffs have provided sufficient proof that their proposed class is ascertainable and because they seek certification under Rule 23(b)(2) and not (b)(3), there is no requirement that Plaintiffs demonstrate "an appreciable number of Medicaid-enrolled children [who] have had EPSDT services denied."[4] (Dkt. 48 at 11); *Underwood*, 2014 WL 67644 at *6; *J.M.*, 337 F.R.D. at 446; *Cherry*, 986 F.3d at 1304. Every child under age 21 enrolled in the Medicaid program subject to Defendant's medical necessity standard is identifiable and no individual inquiry is needed to make that determination. Even if it were necessary to determine whether children had been denied services to ascertain the class, contrary to their suggestions otherwise (Dkt. 48 at 21), Defendant *can* also determine who currently is being denied services. As Defendant affirms in their own legal briefing, most Medicaid enrolled children participate in managed care. (Dkt. 9-12 at 3-4).

---

[4] Plaintiffs also take exception to Defendant's argument that 1,317 requests for fair hearings in a single year is not an appreciable amount. (Dkt. 48 at 11-12). First, it ignores Defendant's own statement that it is a large enough number to rise to "great public importance." (Dkt. 9-12 at 3). Second, Defendant does not state what percentage of total fair hearing requests for 2019-20 that number represents. Third, most of those children enrolled in managed care were required to exhaust a complicated internal appeal process before even being allowed to request a state fair hearing; there are many more impacted children unable to overcome those barriers. 42 C.F.R. § 438.408(f).

Defendant admits it can track denials (Dkt. 48 at 21) through managed care reporting, thus, most Medicaid enrolled children denied services are identifiable. Moreover, Defendant is also responsible for tracking denials for children, like A.W., in fee-for-service Medicaid. (Dkt. 9-12 at 3-4), 42 C.F.R. §§ 431.206-.211. Thus, it can ascertain those denials as well.[5]

### III.   CLASS CERTIFICATION IS NECESSARY

Defendant asserts that class certification is not "necessary" because, if the individual plaintiffs are granted the relief they seek in their Complaint, it "would amount to exactly the same relief as an injunction for an entire class." (Dkt. 48 at 15). Necessity is not a requirement of class certification in this Circuit and the wisdom of its application has been significantly questioned. *M.R.*, 286 F.R.D. at 519 ("[t]he Eleventh Circuit has never expressly stated whether it recognizes a necessity requirement in the Rule 23(b)(2) analysis."); *Littlewolf v. Hodel*, 681 F. Supp. 929, 937 (D.D.C. 1988) ("Were class certification inappropriate if 'unnecessary,' it would be inappropriate whenever only injunctive relief is sought, as the proposed relief would apply to all persons, whether class members or not.").[6]

---

[5] Significantly, children can be harmed by the illegal standard even where Defendant does not deny a service. For example, limiting the class definition to only those denied services would not account for Medicaid providers who adapt their recommended prescriptions to what Defendant will authorize, not what federal Medicaid law guarantees. Thus, the breadth of the class is necessary to include all potentially injured children.

[6] While *Cherry* dealt with the implied concept of administrative feasibility, it also suggests that the Eleventh Circuit is unwilling to read *any* implied requirement into a Rule 23 analysis. 986 F.3d at 1304; *see also,* 2 *Newberg on Class Actions*, §4.35 (5th ed. 2021) (confirming that "many

Even where relief to individual plaintiffs may inure to the benefit of the class, class certification remains necessary where there is a danger that the individual claim may be moot, where a government defendant has not stated it will apply relief across the board or has not withdrawn the challenged policy, or where plaintiffs request complex affirmative relief instead of a simple declaration that a policy is unconstitutional. *Casale v. Kelly*, 257 F.R.D. 396, 406 (S.D.N.Y. 2009); *Dionne v. Bouley*, 757 F.2d 1344, 1356 (1st Cir. 1985); *A.R. v. Dudek*, No. 12-CIV-60460, 2015 WL 11143082 *7 (S.D. Fla. August 7, 2015).

After filing suit, Defendant, reversed course and authorized A.W. and W.B.'s requested services, and now argues that their claims are moot. (Dkt. 48 at 17-18; Dkt. 47). It is reasonable to conclude Defendant will respond similarly to any additional named plaintiffs. Plaintiffs' claims are not moot, however, if Defendant may, at some point, be correct about mootness, then certification is necessary. *Dionne*, 757 F.2d at 1356; *A.R.*, 2015 WL 11143082 at *7; *Lebron v. Wilkins*, 277 F.R.D. 664, 666 (M.D. Fla. 2011) (because "Plaintiff's claim could become moot at some point… the more prudent course is to certify…"). Certification is also necessary because Defendant has not expressed she will apply

---

courts have rejected the necessity doctrine outright as being non-textual noting that a need requirement finds no support in Rule 23, and, if applied, would entirely negate any proper class certifications under Rule 23(b), a result hardly intended by the Rules Advisory Committee.").

11

any ordered affirmative injunctive relief across the board nor has she offered plans to withdraw the policies Plaintiffs challenge. *Casale v. Kelly*, 257 F.R.D. at 406.

### IV. PLAINTIFFS' PROPOSED CLASS MEETS THE ELEMENTS OF TYPICALITY AND COMMONALITY

Defendant argues that because Plaintiffs were denied Medicaid services based on particular components within Defendant's medical necessity rule, Plaintiffs' claims are typical of the claims of children whose Medicaid services are subject to other aspects of her rule. (Dkt. 48 at 24). In making this assertion, Defendant largely relies on *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000).

In *Prado-Steiman*, a group of individuals with developmental disabilities seeking home and community-based Medicaid services filed a complaint alleging ten separate legal counts including the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, multiple Medicaid statutory provisions, and the Due Process Clause of the 14th Amendment. *Id.* at 1270-71. The class sought to be certified contained named plaintiffs who *each* possessed facts to establish allegations of *single* counts of the complaint, but *every* named plaintiff did not have facts to represent *all* counts. *Id.* at 1280. To resolve the problem, the Eleventh Circuit did not recommend class certification be denied. Instead, it proposed subclasses, so the individual plaintiffs' facts matched their claims. *Id.* at 1281.

12

*Prado-Steiman* is distinguishable. Here, Plaintiffs allege a single count; Defendant's medical necessity standard violates EPSDT. To establish standing for this claim, Plaintiffs must show that they 1) are Florida Medicaid enrolled, 2) are under the age of 21, and 3) are subject to a policy that prevents them from accessing medical services necessary to correct or ameliorate their health conditions. *Moore ex rel. Moore v. Reese*, 637 F. 3d 1220, 1255 (11th Cir. 2011). Both W.B. and A.W.'s facts fit neatly into those requirements and thus their claims are typical of the class they seek to certify. *Id.* at 1279.

Plaintiffs' proposed class is most like that certified in *M.H. v. Berry*, No. 1:15-CV-1427, 2017 WL 2570262, *4-5 (N.D. Ga. June 14, 2017) because, in that case, it was not necessary to conduct fact-finding to establish commonality; the claim was common to all children under 21 asking that Georgia employ a standard that comported with EPSDT when evaluating the medical necessity of private duty nursing services.[7] If there were 2.5 million children in need of nursing instead of 753, it would not have changed the common questions of fact and law; namely, whether they required private duty nursing under EPSDT and if Georgia's policies prevented them from that access. *Id.*

---

[7] The lack of need for fact-finding in identifying class membership also distinguishes Plaintiffs' proposed class from that proposed in *A.R.* 2016 WL 3766139 at *1.

Defendant's argument attempts to muddy the plain fact that every Medicaid enrolled child under age 21, including W.B. and A.W., are subject to Defendant's medical necessity standard as a whole. (Dkt. 1 at ¶¶ 37-53). These children must establish their eligibility for a service pursuant to the rule, including Defendant's interpretation of that rule.[8] The fact that Defendant has divided this definition into bullet points, rather than including it in one paragraph, is immaterial to Plaintiffs' claims. Children must show they meet every part of the definition. And, it is by Defendant's design that the entire policy applies to such a large class of children.

The relief Plaintiffs seek on behalf of the putative class – a declaration that Defendant's medical necessity standard does not comport with EPSDT and an injunction requiring Defendant to adopt and implement a lawful standard – will "resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). It is Defendant's proposal that the class be narrowed to certain children affected by

---

[8] Defendant states that each prong of Defendant's medical necessity rule can serve as an independent basis for denial of a service (Dkt. 48 at 27), but that is not relevant. What is relevant is that Defendant's regulations require that every Medicaid enrollee – child and adult alike – satisfy all conditions of Fla. Admin. Code R. 59G-1.010 before Defendant will authorize a service. Fla. Admin. Code R. 59G-1.035(6); (Dkt. 48 at 28). Defendant's medical necessity standard also includes the common threads of EPSDT violations that run through it (and as evidenced by their legal memorandum justifying its use of the standard), including that Defendant believes itself to be the final arbiter, that no deference be paid to the treating physician, and that a determination of medical necessity is the same for children as it for adults. (*See* Dkt. 9-3).

14

only certain portions of the standard that would leave the Court unable to resolve these concerns with a single stroke. *Id.*; (Dkt. 48 at 25-26).[9]

### Conclusion

For the foregoing reasons, Plaintiffs respectfully request the Court grant their Motion to certify the putative class pursuant to Fed. R. Civ. P. 23. Respectfully submitted this 19th day of October 2021.

*/s/ Katy DeBriere*
Katherine DeBriere

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of October 2021, I electronically filed the foregoing Motion with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Katy DeBriere*
Katherine DeBriere
Lead Counsel
Fla. Bar No.: 58506
**Florida Health Justice Project**
126 W. Adams Street
Jacksonville, FL 32202
Telephone: (904) 356-8371, ext. 333
debriere@floridahealthjustice.org

---

[9] The multitude of questions that Defendant crafts in her Response (Dkt. 48 at 26) to suggest that commonality and typicality are not met *may* be relevant had the class members sought individual damages and, therefore, would all be required to establish an injury-in-fact, but as previously stated, that requirement does not apply to class certification under Fed. R. Civ. P. 23(b)(2) where the only relief sought is declaratory or injunctive in nature. *See TransUnion Lmtd. Liab. Corp. v. Ramirez*, 141 U.S. at 2208.