UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

W.B., et al.,

        Plaintiffs,

v.

                                 Case No.: 3:21-cv-771-MMH-PDB

SIMONE MARSTILLER, in her official
capacity as Secretary for the FLORIDA
AGENCY FOR HEALTH CARE
ADMINISTRATION,

        Defendant.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS**

COMES NOW Plaintiffs, W.B. and A.W., by and through counsel, and files

this Response in Opposition to Defendant's Motion to Dismiss. As set forth below,

Plaintiffs have standing and state a claim for relief under EPSDT as to themselves

as well as to the putative class.

## I.      THIS COURT HAS SUBJECT MATTER JURISDICTION

### A.    Plaintiffs Have Article III Standing

Under Fed. R. Civ. P. 12(b)(1), to establish standing at the motion to dismiss

stage, it is sufficient for plaintiffs to allege "general factual allegations of injury

resulting from the defendant's conduct …." *Lujan v. Defenders of Wildlife*, 504

U.S. 555, 561 (1992). An Article III standing analysis has three components:

> "(1) the plaintiff [has] suffered an 'injury in fact'…which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2)…a causal connection [exists] between the injury and the conduct complained of…and (3) it [is] likely, not merely speculative, that the injury will be redressed by a favorable decision."

*31 Foster Children v. Bush*, 329 F.3d 1255, 1263 (11th Cir. 2003) (citation omitted). A case only becomes moot "when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Id.*; *see also Jews for Jesus, Inc. v. Hillsborough County Aviation Auth.*, 162 F.3d 627, 629 (11th Cir. 1998) (citation omitted) ("A case is moot when events subsequent to the commencement of a lawsuit create a situation in which the court can no longer give the plaintiff meaningful relief.")

In *31 Foster Children v. Bush*, the Eleventh Circuit reviewed whether children retained standing to challenge systemic deficiencies in the foster care system which they alleged violated multiple federal rights, including due process and the Adoption Assistance and Child Welfare Act. 329 F.3d at 1263-65. The state argued that, because the plaintiffs complained about only past harms and sought relief "for aspects of the Florida foster care system that have not caused them injury," the plaintiffs lacked standing. *Id.* at 1265. The appeals court disagreed, finding that "a plaintiff need not wait for an injury to occur" and while "future injury that depends on either the random or unauthorized acts of a third party is too speculative to satisfy standing…when the threatened acts that will

2

cause injury are authorized or part of a policy, it is significantly more likely that injury will occur again." *Id.* at 1265-66. Because the alleged systemic deficiencies amounted to injurious policies and the plaintiffs, as wards of the state, continued to be subject to those policies, the court found there was a "substantial likelihood that the alleged injury will [again] occur" and the plaintiffs therefore retained standing. *Id.* at 1266.

In *Fla. Pediatric Soc'y v. Benson*, No. 05-CIV-23037, 2009 WL 10668660, at *1-2 (S.D. Fla. Sept. 30, 2009), the court considered whether the named plaintiffs, who challenged the failure of the state to provide Medicaid services class-wide, had standing. Two of the named plaintiffs alleged facts demonstrating that they were previously denied timely access to Medicaid services (or information about how to timely access those services) because of system-wide deficiencies for which the Agency for Health Care Administration (AHCA) was responsible. *Id.* at *2. Based on these allegations, the court found that the plaintiffs' injuries were "likely to recur in the future" and they could both "show causation and redressability because the imminent denial of prompt, necessary care and lack of information [was] allegedly caused by AHCA's failure to fulfill its statutory responsibilities [under the federal Medicaid Act]." *Id.*; *see also M.R. v. Bd. of Sch. Comm'rs of Mobile Cty.*, 286 F.R.D. 510, 516 (S.D. Ala. 2012) (quotations omitted) (plaintiffs had standing where it was "reasonable to conclude

that…named plaintiffs are likely to have another encounter with government officials of the kind which precipitated the complained of act").

Contrary to Defendant's assertion, Plaintiffs' claim is not a generalized grievance. (Dkt 47 at 12). Plaintiffs have alleged that Defendant, when evaluating the medical necessity of their requests to authorize Medicaid services, subjects them to a standard of medical necessity that falls outside of Defendant's authority under EPSDT. (Dkt. 1, ¶¶4, 12-13, 37-133). Defendant's adoption of this overly restrictive standard impeded Plaintiffs' access to medical services that, only once this complaint was filed, did Defendant then acknowledge should be authorized pursuant to EPSDT. (Dkt. 1, 59-133; Dkt. 47-1 & 47-2).

Defendant's denial of these services was based on a policy that Plaintiffs will be subject to each time they request a Medicaid service, so it is "reasonable to conclude" Defendant's standard will again result in the Plaintiffs' being unable to access services to which they are entitled. *M.R.*, 286 F.R.D. at 516; *see also Fla. Pediatric Soc'y*, 2009 WL 10668660 at *2; *31 Foster Children*, 329 F.3d at 1266. Defendant's subjection of Plaintiffs to an allegedly unlawful standard which has caused harm in the past and poses "a material risk of harm" to them in the future, *Muransky v. Godiva Chocolatier, Inc.,* 979 F.3d 917, 928 (11th Cir. 2020), therefore "is enough…to confer standing in the undemanding Article III sense." *M.R.*, 286 F.R.D. at 516. In addition, a declaratory judgment finding Defendant's

standard unlawful and enjoining Defendant to adopt a standard that comports with EPSDT will provide "meaningful relief" because it will ensure Plaintiffs' future Medicaid service requests are evaluated correctly without the risk of unlawful impediment. *Jews for Jesus, Inc.*, 162 F.3d at 629.[1]

### B.     Even if this Court finds that Plaintiffs' claims are moot, the voluntary cessation exception applies.

Even if their claims are moot, Plaintiffs meet the voluntary cessation exception to mootness. According to "the doctrine of 'voluntary cessation,' a party choosing to end conduct alleged to be illegal does not necessarily deprive the tribunal of the power to hear and determine the case." *Rich v. Sec'y Fla. Dep't of Corr.*, 716 F.3d 525, 531 (11th Cir. 2013) (quoting *Harrell v. The Fla. Bar,* 608 F.3d 1241, 1265 (11th Cir. 2010)). Because "the defendant is free to return to his old ways, he bears a heavy burden of demonstrating that his cessation of the

---

[1] Defendant relies on several case to argue that Plaintiffs lack Article III standing, but all are distinguishable.  In *L.M.P. v. School Bd. Of Broward County*, the plaintiffs were not ever denied the services at issue. 879 F.3d 1274, 1281 (11th Cir. 2018) ("Appellants simply were not denied any ABA-based service in their children's IEPs."). In *Banks v. Sec'y of Health and Human Svces.*, No. 21-11454, 2021 WL 3138562, *3-4 (11th Cir. July 26, 2021), the plaintiff could not show defendant's past conduct resulted in his financial harm, and the court remanded for additional factual inquiry regarding future harm. *Summer H. v. Fukino*, No. 09-civ-00047, 2009 WL 1249306, *6-8 (D. Haw., May 6, 2009), is distinguishable because the plaintiffs' Medicaid services were initially approved, and the defendant agreed not to reduce them pending the outcome of their administrative appeals to challenge the state's potential reductions. Plaintiffs in this case have no pending appeals. In addition, *Summer H.* also runs counter to longstanding precedent holding that Plaintiffs are not required to exhaust their administrative remedies to pursue a claim under 42 U.S.C. §1983. *See Patsy v. Board of Regents*, 457 U.S. 496, 516 (1982) ("[W]e conclude that exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983.").

challenged conduct renders the controversy moot…[but] government actors carry a lesser burden." *Id.* In evaluating whether a government actor's cessation of the allegedly illegal conduct renders a claim moot, the court looks at several factors:

> "(1) whether the termination of the offending conduct was unambiguous; (2) whether the change in government policy or conduct appears to be the result of substantial deliberation, or is simply an attempt to manipulate jurisdiction; and (3) whether the government has consistently applied a new policy or adhered to a new course of conduct."

*A.R. v. Dudek*, No. 12-CIV-60460, 2014 WL 11531370, at *10 (S.D. Fla. 2013) (cleaned up).

The timing and content of a governmental defendant's cessation is also relevant. *Harrell*, 608 F.3d at 1266-67. If cessation occurs before notice of a legal challenge is provided, this weighs in favor of mootness, but where it occurs "late in the game," then a court should view mootness with skepticism. *Id.* at 1266 ("[T]he timing and content…are also relevant in assessing whether the defendant's 'termination' of the challenged conduct is sufficiently 'unambiguous' to warrant application of the [ ] presumption in favor of governmental entities."). The presumption that weighs in the government's favor will not apply unless there is "sufficient evidence that the allegedly offending conduct w[ould] not recur." *Rothe Dev. Corp. v. Dep't of Def.*, 413 F.3d 1327, 1333–34 (Fed.Cir.2005).

In *A.R.*, a group of children filed a class action complaint challenging Florida's policies and practices which allegedly resulted in their unnecessary

institutionalization in lieu of home care. 2014 WL 11531370 at *1-2. After suit

was initiated, the defendant, AHCA, provided certain institutionalized plaintiffs

care in the community and amended *some* policies plaintiffs alleged caused their

institutionalization or risk of institutionalization. *Id.* at *11-12. Despite AHCA's

actions, the court found that plaintiffs met the voluntary cessation exception

because AHCA had not "unambiguously terminated" the offending policies in its

medical necessity definition set forth in Fla. Admin. Code R. 59G-1.010 which

permeated the case. *Id.* at *12.

Here, Defendant has not undertaken any steps to resolve this action other

than authorize the Medicaid services that served as a catalyst to Plaintiffs'

complaint. Defendant has not even attempted, as she did in *A.R.*, to amend her

offensive policies to remedy Plaintiffs' concerns. As in *A.R.*, until Defendant

formally adopts a new, lawful standard for evaluating Medicaid services for

children under age 21, she cannot demonstrate cessation of the challenged action is

unambiguous; the "relief" of providing services to W.B. and A.W. has not

eradicated the unlawful effects of Defendant's standard which is largely based on

Fla. Admin. Code R. 59G-1.010 (and thus permeates Plaintiffs' claims). *A.R.* at

*12; *see also A.R. v. Ag'cy for Health Care Admin.*, 769 Fed. App'x 718, 725-26

(11th Cir. 2019) (only when AHCA terminated reliance on its offensive policies

through formal adoption of new policies were plaintiffs' claims then moot).

W.B. pursued his appeal rights within his Medicaid plan (Dkt. 9-6) and A.W. pursued hers to a Medicaid fair hearing. (Dkt. 9-2). By proceeding through the administrative appeals process, W.B. and A.W. gave Defendants ample opportunity to reverse course and apply the correct standard to their requests. Instead, not until Plaintiffs filed suit, did Defendant then determine their requested Medicaid services were medically necessary and authorize them. (Dkt. 47-2; 47-3). The timing of Defendant's decision should therefore be viewed with skepticism. *Harrell*, 608 F.3d at 1266.

Defendant also fails to provide any guarantee that Defendant will honor the same standard for W.B. and A.W.'s other Medicaid service requests in the future. Thus, there is insufficient evidence to establish that Defendant's "allegedly offending conduct w[ould] not recur." *Harrell*, 608 F.3d at 1266-67; *see also Fla. Pediatric Soc'y*, 2009 WL 10668660 at *3 (provision of Medicaid services after filing of the complaint was voluntary cessation of the alleged wrongful behavior). The voluntary cessation exception applies, and Plaintiffs therefore retain standing.[2]

## II.     PLAINTIFFS STATE A CLAIM

### A. Standard of Review Under Fed. R. Civ. Pro. 12(b)(6)

---

[2] As stated in Plaintiffs' Reply to Defendant's Class Certification Response, Plaintiffs' claims are also inherently transitory, and standing should relate back to the time the Complaint was filed. (Dkt. 53 at 6-8).

When ruling on a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim, a court reviews the contents of the complaint to ensure it contains sufficient allegations to state a facially plausible claim. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The court "should assume, on a case-by-case basis that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement of relief." *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010). Federal Rule of Civil Procedure 8(a)(2) "does not impose a probability requirement at the pleading stage, but instead simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Watts v. Fla. Int'l University,* 495 F.3d 1289, 1295-96 (11th Cir. 2007). A complaint is to be construed broadly and the allegations should be viewed in a light most favorable to the plaintiff. *Id.* at 1295 (citations omitted).

As set forth below, Plaintiffs allege that Defendant has adopted a standard of medical necessity that fails to incorporate EPSDT's more expansive view and otherwise exceeds the bounds of her authority under EPSDT to define medical necessity. Plaintiffs further allege that, using this standard, Defendant denied Plaintiffs' Medicaid services to which they were entitled and subjects other Medicaid enrollees under age 21 to the same illegal standard. Thus, Plaintiffs' Complaint states an EPSDT claim for themselves and the putative class, and they easily meet the undemanding standard in Federal Rule of Civil Procedure 8(a)(2).

9

**B. Plaintiffs State a Claim that Defendant's Medical Necessity Standard Exceeds EPSDT'S Allowable Parameters.**

1. <u>The EPSDT Legal Framework and Its Limitation on a State's Discretion to Define "Medical Necessity."</u>

Federal law requires Defendant to provide to all Medicaid enrolled children under age 21 "early and periodic screening, diagnostic and treatment services." *See* 42 U.S.C. §§ 1396a(a)(10)(A), 1396a(a)(43), 1396a(a)(4)(B), and 1396d(r) (EPSDT provisions). The EPSDT provisions require that the services described in 42 U.S.C. § 1396d(a) be provided when they are "necessary health care, diagnostic services, treatment and other measures…to correct or ameliorate defects and physical and mental illnesses and conditions…regardless of whether or not such services are covered" for adults. *Id.* §1396d(r)(5); *see also Pittman v. Sec'y, Fla. Dep't of Health and Rehab. Servs.*, 998 F.2d 887, 889 (11th Cir. 1993); *Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1235 (11th Cir. 2011) (under §1396d(r)(5), the state "is required to provide all medical services and treatment necessary to correct or ameliorate" a child's medical condition).

"The EPSDT benefit is more robust than the Medicaid benefit for adults" because the "goal of EPSDT is to assure that individual children get the health care they need when they need it …." *M.H. v. Berry,* No. 15-cv-1427, 2021 WL 1192938, *6 (N.D. Ga. March 29, 2021) (quoting the U.S. Dep't of Health & Human Servs., Ctrs. for Medicare & Medicaid Servs. (CMS), *EPSDT: A Guide for*

*States: Coverage in the Medicaid Benefit for Children and Adolescents*, at 1 (June 2014) (EPSDT Guide). As such, coverage under EPSDT for children should incorporate "a more expansive view, allowing for services that sustain or support, as opposed to actually treating [a] disability." *C.F. v. Dep't of Children and Families*, 934 So.2d 1, 6 (Fla. 3d DCA 2005); *see also Parents' League for Effective Autism Servs. v. Jones-Kelley*, 339 Fed. Appx. 542, 551 (6th Cir. 2009) (§1396d(a)(13) "reflects the extremely broad EPSDT obligation").

Defendants are correct that a state may place limits on a child's Medicaid service based on criteria such as medical necessity. 42 C.F.R. §440.230(d); *Moore*, 637 F.3d at 1232-33 (the "'medical necessity' standard 'has become a judicially accepted component of the federal legislative [EPSDT] scheme...'"). Critically, however, while states are "permitted (but not required) to set parameters that apply to the determination of medical necessity…*those parameters may not contradict or be more restrictive than the federal [EPSDT] statutory requirement*." EPSDT Guide at 23 (emphasis added); *see also*, *Moore*, 637 F. 3d at 1236 (CMS requires that the "state's definition of the [EPSDT] service comports with the statutory requirement that the state provide all services '…medically necessary to ameliorate or correct…conditions…"). Where the state "has exceeded the bounds of its authority by adopting an unreasonable definition of medical necessity…aggrieved Medicaid recipients have recourse in the courts." *Moore*, 637 F.3d at 1259.

11

Allowable parameters the state may use in defining medical necessity include that Medicaid services not be "unsafe or experimental," that they be "actually needed, that all equally effective, less expensive alternatives have been given consideration and that the proposed service and materials conform to commonly accepted standards." *Moore*, 637 F. 3d at 1237-38. Any caps on services must be tentative and incorporate an exception for those instances where a service is determined medically necessary for an individual child. *EPSDT Guide* at 23-24.

Case law further describes EPSDT's limits on the state's discretion in defining medical necessity. In *C.R. by and through Reed v. Noggle*, a Medicaid enrolled child challenged the state's medical necessity standard used to authorize the amount and duration of Medicaid speech therapy services. No. 1:19-CV-04521, 2021WL4538506, at *3 (N.D. Ga., Sept. 13, 2021). As in *Moore*, the state agreed the therapy itself was medically necessary to correct or ameliorate C.R.'s condition, but there was a dispute as to the "sufficient amount, duration, and scope to reasonably achieve their corrective or ameliorative purpose." *Id.* at *7. Specifically, the state's standard authorized therapy hours only where rapid improvement could be shown; this standard conflicted with EPSDT's ameliorative purpose which requires only that the service maintain or prevent regression of a condition. *Id.* at *7-8. Because the state's standard was "incompatible with the

12

Medicaid Act's mandate to cover ameliorative EPSDT services" and caused the state "to deny C.R. EPSDT benefits that were medically necessary to ameliorate her conditions," the court granted judgment in favor of plaintiff. *Id.* at *7-8, 12; *see also Parents' League*, 339 Fed. Appx. at 551 (6th Cir. 2009) (affirming an order granting preliminary injunction where plaintiffs argued the state's narrow and restrictive standard requiring that a Medicaid service "restore an individual to the best possible functional level" potentially conflicted with EPSDT).

In *M.H.*, a class of Medicaid enrolled children in need of nursing services alleged that several state Medicaid policies and practices violated their EPSDT rights, including that the state "fail[ed] to accord the treating doctor's recommendation appropriate weight." *M.H.*, 2021 WL 1192938, at *1. Regarding this policy, the court found that the state may not simply note the treating professional's recommendation and then disregard it. *Id.* at *6. Instead, the treating professional is "a key figure" in determining the medical necessity of services and "the state is not empowered to act as the 'final arbiter' of medical necessity and…ignore the reasons given in the treating physician's recommendation…" *Id.*; *see also*, *C.R.*, 2021 WL 4538506, *7 (the treating physician "assumes the primary responsibility of determining what treatment should be made available").

The state also may not engraft additional criteria onto a medical necessity determination for children under 21. *See Jackson v. Millstone*, 801 A.2d 1034,

13

1049 (Md. 2002) (finding the requirement that treatment be "appropriate" when making a medical necessity determination imposed additional criteria upon Medicaid enrolled children in violation of EPSDT); *see also*, *M.H.*, 2021 WL 1192938, at *7 (the state should determine whether a service is medically necessary "based on whether a service is medically necessary to correct or ameliorate a beneficiary's condition" and not "based upon non-medical criteria").

2. <u>Plaintiffs Allege that Defendant's Medical Necessity Standard Exceeds Allowable Parameters and Therefore State an EPSDT Claim on behalf of the Putative Class.</u>

Here, Plaintiffs allege that Defendant's standard exceeds allowable boundaries in defining medical necessity in the following ways. First, Plaintiffs allege that Defendant requires that a Medicaid service be "necessary to protect life, to prevent significant illness or significant disability, or to alleviate severe pain." Fla. Admin. Code R. 59G-1.010. (Dkt. 1, ¶¶12, 37-41). In contrast, the federal EPSDT provisions require only that a service be necessary to "correct or ameliorate" a child's illness, disability, or other health condition without setting a limit on the degree of that condition. 42 U.S.C. § 1396d(r)(5); *Parents' League*, 339 Fed. Appx. at 551; *see also Q.H. v. Sunshine State Health Plan, Inc.*, 307 So. 3d 1, 14 (Fla. 4th DCA 2020).

Second, Plaintiffs allege that Defendant requires Medicaid enrolled children to demonstrate a requested Medicaid service will "be furnished in a manner not

primarily intended for the convenience of the recipient, the recipient's caretaker, or the provider." (Dkt. 1, ¶¶37-38, 42-43, 52). By contrast, EPSDT provisions do not authorize the Defendant to consider "convenience" as a factor or otherwise engraft additional criteria onto EPSDT other than what is necessary to correct or ameliorate a condition. *See Jackson*, 801 A.2d at 1049; *M.H.*, 2021 WL 1192938 at *7.

Third, Plaintiffs allege that Defendant acts as the final arbiter of medical necessity. (Dkt. 1, ¶51, 54, 56); *see* Fla. Admin. Code R. 59G-1.053 (AHCA "is the final arbiter of medical necessity for the purposes of determining Florida Medicaid reimbursement…"). Relatedly, Plaintiffs allege that Defendant provides no deference to treating professionals and arbitrarily disregards their opinions. (Dkt. 1,¶51). EPSDT requires instead that the treating professional be treated as a "key figure" and "the state is not empowered to act as the 'final arbiter' of medical necessity.…'" *M.H.*, 2021 WL 1192938, at *6 (citing *Moore*, 637 F.3d at 1257-59); *see also*, *C.R.*, 2021 WL 4538506, at *7; *Q.H.*, 307 So.3d at 13 ("[W]hile a treating physician's opinion of medical necessity is not dispositive, the state also does not have unilateral discretion to define medical necessity under EPSDT.").

Finally, Plaintiffs allege that Defendant has not created any exceptions in the application of Defendant's medical necessity definition to children. (Dkt. 1, ¶¶37-38, 48, 50, 54); *see also* Fla. Admin. Code R. 59G-1.035(6) ("In order for the

health service to be covered under the Florida Medicaid program, it must also meet all other medical necessity criteria as defined in subsection 59G-1.010 ….").[3] Defendant's failure to create an exception for Medicaid enrolled children's services to be evaluated under the "extremely broad EPSDT obligation" gives rise to an EPSDT violation. *Parents' League*, 339 Fed. Appx. at 549; *C.F.*, 934 So.2d at 6; EPSDT Guide at 23-24.

Taking the above allegations as a whole, Plaintiffs have included in their Complaint numerous allegations that Defendant subjects the putative class, without exception, to a medical necessity standard that exceeds allowable EPSDT parameters. As such, Plaintiffs have stated an EPSDT claim on behalf of the class.

    3.  The Named Plaintiffs State Individual EPSDT Claims.

The *C.R.* court identified the elements necessary to state an EPSDT claim for individual plaintiffs. 2021 WL 4538506, at *11 (finding that it was "undisputed that there was a justiciable controversy between the parties when C.R. filed her

---

[3] The single exception to Defendant's rule is her decision to carve out children requesting private duty nursing services from the consideration of whether the service is for convenience. *See* Fla. Admin. Code R. 59G-4.261 (providing that the medical necessity definition "shall not be applicable when determining the medical necessity of private duty nursing services"). Defendant created this exception after children seeking access to private duty nursing services filed a complaint that alleged, in part, that Defendant's "convenience" consideration violated EPSDT. *C.V., by and through Wahlquist v. Senior*, No. 12-60460-CIV, 2017 WL 2730397, *3, 7 (S.D. Fla., Mar. 22, 2017); *see also*, *A.R. v. Agency for Health Care Administration*, 769 Fed. Appx. at 725-26. In response, Defendant amended the definition, but it now arguably violates her obligation to not "arbitrarily deny or reduce the amount, duration, or scope of a required service… solely because of the diagnosis, type of illness, or condition." 42 C.F.R. §440.230(c).

complaint: [s]he alleged [the state] deprived her of a Medicaid benefit to which she was entitled….”). Here, A.W. and W.B., both under 21, allege they were deprived Medicaid services to which they were entitled because of Defendant's standard. (Dkt. 1, ¶¶8-9; 87-101;119-133); *Id.*

Defendant's medical necessity standard – which, as stated above, is comprised of policies that Plaintiffs allege exceed the allowable bounds of Defendant's authority under EPSDT – curtailed W.B. and A.W.'s access to Medicaid services and poses future risk of that same outcome. (Dkt. 1, ¶¶37-58; 87-101; 119-133). Defendant applied the same standard she uses for adults to Plaintiffs and, acting as the final arbiter of medical necessity, arbitrarily ignored their treating professionals' extensive opinions. (Dkt. 1, ¶¶38, 87-101; 119-131); *M.H.*, 2021 WL 1192938, at *6; *C.R.*, 2021WL4538506, at *7; *Q.H.*, 307 So.3d at 13. Defendant also failed to apply EPSDT's broader correct or ameliorate standard in determining whether Plaintiffs' requested services were “equally effective.” (Dkt. 1, ¶¶94-95, 128); *Parents' League*, 339 Fed. Appx. at 549; *C.F.*, 934 So.2d at 6; EPSDT Guide at 23-24. For W.B., Defendant additionally zeroed in on his obligation under Defendant's standard, which is shared by A.W. and all Medicaid enrolled children, to prove the requested service was not intended for convenience. (Dkt. 1, ¶¶42-43, 87, 97-98); *Jackson*, 801 A.2d at 1049; *M.H.*, 2021 WL 1192938, at *7. As such, Plaintiffs have stated individual EPSDT claims for relief.

## C. Defendant Asserts an Incorrect Standard to State an EPSDT Claim

In her Motion to Dismiss, Defendant erroneously asserts Plaintiffs must affirmatively demonstrate Defendant's medical necessity standard is *per se* unreasonable, and Plaintiffs must allege it violates federal law "in every set of circumstances" to support an EPSDT claim. (Dkt. 47 at 16).[4] Defendant, in citing *Moore* for support of this argument, misconstrues the Circuit's findings and procedural posture of the case. The *Moore* court never found that "any facial challenge to Georgia's medical necessity standard as applied to EPSDT services would not survive…." (Dkt. 47 at 20). Instead, the court observed that, based on her pleadings, the plaintiff simply had not mounted a challenge to the policies themselves, but only as they applied to her. *Moore*, 637 F.3d at 1256.

More similarly to the case at hand, the court in *M.H.*, largely relying on *Moore* for its legal conclusions, certified a class based on Defendant's policies and practices that ran afoul of EPSDT. 2021 WL 1192938, at *4-7. The court did not require that Plaintiffs establish the policies and practices violate the rights of Medicaid enrolled children in every instance or that the policies be *per se*

---

[4] To the extent that Defendant, as she did in her Class Certification Response, continues to argue that Plaintiffs have made an "as applied" challenge and, therefore seeks review of "highly individualized determinations of liability," this "argument relates to class certification and in particular, whether the issues to be decided are sufficiently common to the class members and whether the plaintiffs' claims are sufficiently typical." *N.B. v. Hamos*, No. 11-CV-06866, 2013 WL 6354152, *9 (N.D. Ill., Dec. 5, 2013). Thus, the Defendant's argument does "not supply a valid basis for dismissal pursuant to Rule 12(b)(6)." *Id.*

unreasonable. *See generally, Id.* Instead, similar to the relief requested by Plaintiffs here, the court enjoined Defendant from applying the illegal standard to any Medicaid enrolled child's request for Medicaid nursing services. *Id.* at 7.

Relatedly, Defendant argues that Plaintiffs' "Complaint contains no concrete examples of how the 'medical necessity' definition prevents Plaintiffs or any members of the putative class from obtaining services in the manner they allege violates federal law…." (Dkt. 47 at 2). On the contrary, under Fed. R. Civ. P. (8)(a), Plaintiffs need only allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of" how Defendant's medical necessity standard prevents the class from accessing services to which they are entitled under EPSDT. *Watts*, 495 F.3d at 1295-96. In addition to their individual facts, Plaintiffs' detailed description of the state district court of appeal decisions discussing the illegality of Defendant's standard raise a reasonable expectation that discovery will establish examples of how Defendant's standard impedes Medicaid enrolled children from accessing EPSDT services. (Dkt. 1, ¶¶43, 45-47, 53).

Defendant also argues that Plaintiffs fail to state a claim because they read the critical word "necessary" out of 42 U.S.C. §1396d(r)(5). (Dkt. 47 at 17). As detailed above, this misstates Plaintiffs' argument. *See* pp. 9-16 *supra.* Moreover, taken to its logical conclusion, Defendant's argument would allow the state unfettered discretion to define medical necessity for EPSDT services. Defendant's

discretion in defining medical necessity under EPSDT is not limitless, however. And, that Defendant's rule contains some language that may be compatible with EPSDT should not save its offensive aspects because as Plaintiffs allege, Defendant's standard, overall "has exceeded the bounds of its authority by adopting an unreasonable definition." *Moore*, 637 F.3d at 1259.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court deny Defendant's Motion to Dismiss.

Respectfully submitted this 29th day of October 2021.

*/s/ Katy DeBriere*
Katherine DeBriere

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of October 2021, I electronically filed the foregoing Motion with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Katy DeBriere*
Katherine DeBriere
Lead Counsel
Fla. Bar No.: 58506
**Florida Health Justice Project**
126 W. Adams Street
Jacksonville, FL 32202
Telephone: (904) 356-8371, ext. 333
debriere@floridahealthjustice.org