IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Case No.: 3:21-cv-771-MMH-PDB

W.B., by and through his father and
legal guardian, DAVID B., and A.W.,
by and through her mother and legal
guardian, BRITTANY C., on behalf of
themselves and all others similarly
situated,

    Plaintiffs,

v.

SIMONE MARSTILLER, in her
official capacity as Secretary for the
FLORIDA AGENCY FOR HEALTH CARE
ADMINISTRATION,

    Defendant.
_____/

**REPLY TO RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Pursuant to this Court's Order (D.E. 56), Defendant Simone Marstiller, in her official capacity as Secretary for the Florida Agency for Health Care Administration ("AHCA"), files this Reply to the Response to AHCA's Motion to Dismiss the Complaint filed by Plaintiffs W.B. and A.W. (the "Response"), and incorporated memorandum of law.

Apart from two specific, concrete denials of requests for Early and Periodic Screening, Diagnostic and Treatment ("EPSDT") services sought, one each, by

Plaintiffs W.B. and A.W., the Complaint can be best described as alleging a generalized grievance directed at AHCA's definition of medical necessity as it applies to the provision of EPSDT services for all Medicaid-eligible children. The doctrine of mootness certainly applies to the two specific denials alleged in the Complaint because, as the Response concedes, the specific EPSDT services sought by Plaintiffs that underpinned the Complaint were authorized subsequent to the filing of the Complaint and are now being provided to Plaintiffs. And the voluntary cessation exception to the mootness doctrine just as certainly does not apply to these alleged denials. Critically, Plaintiffs do not assert that they have any basis to believe that authorization for these services will be withdrawn if this lawsuit is dismissed.

Accordingly, all that remains of this action is Plaintiffs' generalized grievance with AHCA's definition of medical necessity—a generalized grievance that they claim to share equally with each of the more than two million recipients of EPSDT services in Florida, without any specific demonstration of how the definition is causing ongoing harm to either Plaintiff or any others among the millions of recipients in the putative class Plaintiffs have asked this Court to certify.

In relying on the voluntary cessation exception to mootness to avoid dismissal of this action, Plaintiffs conflate the mootness doctrine with Plaintiffs' duty to allege sufficient facts to establish Article III standing in the Complaint and Plaintiffs' ongoing duty to maintain Article III standing throughout this action. AHCA does not

contend in its Motion to Dismiss that Plaintiffs' cause of action has become moot by virtue of the provision of the specific services mentioned in the Complaint. Rather, the problem with the Complaint is that, in the absence of those specific service denials, the Complaint fails to allege an injury-in-fact sufficient to satisfy the irreducible jurisdictional minimum necessary to confer standing on Plaintiffs in the first place. *See, e.g.*, *Dermer v. Miami-Dade Cty.*, 599 F.3d 1217, 1221 (11th Cir. 2010) (holding failure to provide any detail beyond a generalized grievance with ordinance was insufficient to confer standing).

"[S]tanding and mootness are in fact distinct doctrines which must not be confused." *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1189 n.16 (11th Cir. 2007). Where, as here, a plaintiff fails to allege sufficient facts to demonstrate standing, it is not necessary to engage in an analysis regarding mootness or any of the exceptions to mootness. *Loper v. Lifeguard Ambulance Serv., LLC*, No. 2:19-CV-583-CLM, 2021 WL 4458873, at *9 (N.D. Ala. Sept. 29, 2021) (recognizing that the voluntary cessation doctrine does not apply to standing); *Michalares-Owens v. Me, Myself & I, Inc.*, No. 819CV03055T02AEP, 2020 WL 4924754, at *1 (M.D. Fla. Aug. 21, 2020) (declining to consider voluntary cessation because plaintiff did not allege facts to indicate a future injury and thus lacked standing).

### I. Plaintiffs' Specific Service Denials are Moot, and Plaintiffs Have Not Demonstrated That AHCA Will Reverse Its Authorizations.

A case becomes moot, and must be dismissed, when the court is deprived of

3

the ability to give a plaintiff meaningful relief due to events occurring subsequent to the filing of the lawsuit. *See Beta Upsilon Chi Upsilon Chapter at the Univ. of Fla. v. Machen*, 586 F.3d 908, 916 (11th Cir. 2009) ("The law is clear that if, pending an appeal, events transpire that make it impossible for this court to provide meaningful relief, the matter is no longer justiciable.").

This is certainly the case with respect to the only concrete claims alleged in the Complaint. The Complaint asks that this Court "[g]rant a preliminary and permanent injunction directing Defendant to evaluate Medicaid coverage for W.B. and A.W.'s requested services under a standard of medical necessity that comports with federal Medicaid law and prohibit Defendant from denying the medically necessary services." (D.E. 1, p. 33). It is undisputed these alleged harms have since been resolved, and, thus, the requested injunctions are completely unnecessary.

Moreover, Plaintiffs do not meaningfully assert that the voluntary cessation exception to mootness has any application to their specific claims for EPSDT services, nor could they. Voluntary cessation is an exception to the general proposition that a matter is non-justiciable when the court can no longer provide meaningful relief. *Beta Upsilon Chi*, 586 F.3d at 916. However where, as here, there is no "reasonable expectation" that "the accused litigant will resume the conduct after the lawsuit is dismissed," the voluntary cessation exception has no application. *See Jacksonville Prop. Rts. Ass'n, Inc. v. City of Jacksonville, FL*, 635 F.3d 1266,

4

1274 (11th Cir. 2011) (holding because City was unlikely to jump through "bureaucratic hoops" to continue to engage in challenged conduct, voluntary cessation exception did not apply). Importantly, government actors are entitled to a rebuttable presumption that the challenged conduct will not recur. *See Beta Upsilon Chi*, 586 F.3d at 916; *see also Revolution Outdoor Advert., Inc. v. City of Casselberry*, No. 6:98 CV 1344 ORL 18C, 2000 WL 34541003, at *3 (M.D. Fla. June 20, 2000), *aff'd sub nom. Revolution Outdoor v. City of Casselberry*, 234 F.3d 711 (11th Cir. 2000) (finding voluntary cessation exception did not apply when "Plaintiff offer[ed] no evidence showing that Defendant's course of conduct is actually a strategic ploy designed to defeat jurisdiction in this case.").

That is, at a minimum, there must be some assertion that there is a reasonable expectation that the government actor will resume the allegedly unlawful conduct. *See Gordon v. Ripa*, No. 21-CV-22177, 2021 WL 4865267, at *3 (S.D. Fla. Oct. 19, 2021) (holding voluntary cessation exception did not apply when "there is no further action for the Court to take since the Government's allegedly illegal conduct toward Gordon has ceased and any further decision in this case would constitute an impermissible advisory opinion"); *Diaz v. Inch*, No. 19-CV-23954, 2019 WL 8808193, at *1 (S.D. Fla. Dec. 2, 2019) (holding plaintiff's request for medical treatment was moot after the treatment was provided); *Susan J. v. Riley*, 616 F. Supp. 2d 1219, 1234 (M.D. Ala. 2009) (holding certain plaintiffs' claims were moot and

the voluntary cessation exception did not apply because they had received all requested services and were no longer on a waiting list); (*N.A.A.C.P., Inc. ex rel. Volusia Cty. Branch v. Lowe*, 340 F. Supp. 2d 1329 (M.D. Fla. 2004) (holding voluntary cessation exception did not apply when plaintiffs did not offer any evidence that government entity would break its promise); *Cole v. Nat'l Collegiate Athletic Ass'n*, 120 F. Supp. 2d 1060, 1069 (N.D. Ga. 2000) (rejecting application of voluntary cessation exception where request for relief was moot and there was no allegation that defendants' policies changed in granting the relief).

With respect to the only concrete claims alleged in the Complaint—the two examples of EPSDT services originally denied that have subsequently been authorized—the Plaintiffs have not asserted or offered any evidence to suggest that the services will be taken away if this lawsuit is dismissed. Thus, to the extent Plaintiffs seek relief for these alleged past harms, their claim is unquestionably moot, and the voluntary cessation exception has no application. At a minimum, the Court should hold that Plaintiffs have made no effort to overcome the presumption that the challenged conduct would not reoccur. A holding otherwise would result in an advisory opinion regarding AHCA's definition of "medical necessity," without a corresponding concrete harm for which the Court could grant meaningful relief.

## II. Plaintiffs' Generalized Challenge to the Medical Necessity Definition Is Not Sufficient to Support Article III Standing.

Because the only concrete injuries alleged in the Complaint have been

remediated, Plaintiffs' only remaining alleged "injury"—that W.B., A.W., and all of the millions of other Medicaid-eligible children in Florida have been harmed in unspecified ways by AHCA's definition of medical necessity—is insufficient to satisfy an Article III standing inquiry. It is Plaintiffs' burden to "clearly and specifically" demonstrate Article III standing. *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1230 (11th Cir. 2000). The Court cannot "speculate concerning the existence of standing, nor should [it] imagine or piece together an injury sufficient to give plaintiff standing when it has demonstrated none." *Id.* at 1229-30. That is, Plaintiffs must demonstrate, as an irreducible, jurisdictional minimum: (1) a concrete and particularized injury in fact; (2) that is causally connected to the defendant's actions; and (3) that is redressable by a favorable decision. *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1229 (11th Cir. 2021). Further, the "injury-in-fact demanded by Article III requires an additional showing when injunctive relief is sought. In addition to past injury, a plaintiff seeking injunctive relief must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013) (quotations omitted).

As stated in AHCA's Motion to Dismiss, it is well-established that a generalized grievance with a statute is insufficient for purposes of Article III standing. *See*, *e.g.*, *TransUnion LLC v. Ramirez*, --, U.S. --, 141 S. Ct. 2190 (2021);

*L.M.P. on behalf of E.P. v. School Board of Broward County, Florida*, 879 F.3d 1274 (11th Cir. 2018); *Wood v. Raffensperger*, 981 F.3d 1307 (11th Cir. 2020). In the Response, Plaintiffs state that their claim is not a generalized grievance with AHCA's definition of "medical necessity" because "Plaintiffs have alleged that Defendant, when evaluating the medical necessity of their requests to authorize Medicaid services, subjects them to a standard of medical necessity that falls outside of Defendant's authority under EPSDT." (D.E. 54, p. 4).

This is a textbook example of a generalized grievance. Other than the two specific claims that have now been remedied, the Complaint is devoid of any further detail concerning *how* the named Plaintiffs and the putative class of millions of Medicaid-eligible children have been harmed by this purportedly "too narrow" definition. The Complaint does not allege that W.B. or A.W. have submitted requests for EPSDT services in the past, or that those requests have been denied. The Complaint does not allege that W.B. or A.W. will submit requests for EPSDT services in the future, or that those requests will be denied. The Complaint does not allege any facts to support the conclusion that other unnamed children's requests for EPSDT services have or will be denied. The Complaint is completely silent as to any future material risk of harm stemming from AHCA's definition of "medical necessity." Indeed, the Complaint does not even clearly state which portions of AHCA's "medical necessity" definition are outside of AHCA's authority under the

EPSDT provisions of the Medicaid Act and their implementing regulations.[1]

The cases cited in the Response only serve to underscore why Plaintiffs' remaining claims are non-justiciable generalized grievances that are insufficient to confer Article III standing. *31 Foster Children v. Bush*, 329 F.3d 1255 (11th Cir. 2003) is particularly significant in this regard. In that case, a panel of the Eleventh Circuit considered the claims of children in foster care in Florida, and made clear that allegations of speculative future injuries stemming from allegedly unlawful conduct were insufficient to confer Article III standing. *Id.* at 1262. In doing so, the panel explained: "[w]hen a plaintiff cannot show that an injury is likely to occur immediately, the plaintiff does not have standing to seek prospective relief even if he has suffered a past injury." *Id.* at 1265.

For some of the plaintiffs' claims, the panel concluded that for the plaintiffs that were in the physical custody of the defendants, the degree of immediacy was sufficiently high to confer standing, but that, those plaintiffs not in the defendants' physical custody could not demonstrate that their injuries were imminent because it was uncertain if they would be harmed by the defendants' practices in the future. *Id.*

---

[1] As stated in the Motion to Dismiss, the existence of a medical necessity definition in and of itself does not result in a concrete injury. AHCA is entitled to adopt a definition of medical necessity, and the only injury Plaintiffs allege is a denial of EPSDT services based on those portions of AHCA's medical necessity definition that Plaintiffs content to be more restrictive than the EPSDT provisions of the Medicaid Act would permit.

9

at 1267. Further, with respect to the plaintiffs' procedural due process claim, the panel found that only one plaintiff, who alleged he was denied medical care and a process to review the denial of the medical care, had standing. As to the other plaintiffs, the panel held to the contrary:

> [T]he other plaintiffs . . . have not alleged that they have been denied any entitlement. Without such an allegation, the other plaintiffs are essentially asserting that they will be denied a benefit in the future, and that when that happens, the defendants will provide them with no process for reviewing the denial. The plaintiffs' procedural due process claims are different from their substantive due process claims because the procedural injury requires two steps: the defendants must deny the plaintiffs a benefit and then deny them process. Such an injury may never occur.

*Id.* at 1267.

Similarly, in *M.R. v. Bd. of Sch. Comm'rs of Mobile Cty.*, 286 F.R.D. 510 (S.D. Ala. 2012), Chief Judge Steele considered the plaintiffs' standing to challenge the defendant's alleged custom and practice of suspending students without sufficient due process. The differences between the level of detail of likelihood of future harm alleged in *M.R.* compared to the complete lack of detail in the Complaint is stark. In *M.R.*, the defendant argued that plaintiffs could not show a likelihood of future injury, and, accordingly did not have standing to seek injunctive relief. *Id.* 515. Judge Steele disagreed stating,

> Given the type of relief they seek, the injury in fact that plaintiffs must show is a likelihood of future injury, not merely that they were long-term suspended without due process sometime in the past.

> \*\*\*
>
> To rebut defendant's argument that they face no realistic threat of future injury, plaintiffs make the following showing: (i) some 392 MCPS students received multiple long-term suspensions during the period of 2009 through 2012; (ii) of the 225 students who were long-term suspended between February 1, 2011 and March 31, 2012 without a notice letter or hearing, some 82 of them (or 36.4%) were long-term suspended more than once; (iii) of the seven named plaintiffs, at least two (C.H. and G.H.) received multiple long-term suspensions without notice and a conference; and (iv) one of those plaintiffs (C.H.) received a second long-term suspension without notice and a conference in April 2012, during the pendency of this very lawsuit. In the aggregate, these facts demonstrate that long-term suspensions are recurring punishments meted out by the Board for recurring student misconduct, and that the Board's failure to provide notice and hearing before imposing such suspensions is likewise a recurring phenomenon.

*Id*. at 515. *See also Florida Pediatric Society/Florida Chapter of American Academy. of Pediatrics v. Benson*, No. 05-23037-CIV, 2009 WL 10668660, at \*3 (S.D. Fla. Sept. 30, 2009) (concluding plaintiffs had standing because the "the plaintiffs' ***allegations of future harm*** based on inconsistent care in the past are sufficiently imminent to show standing because there is a realistic danger of sustaining a direct injury in the near future") (emphasis added).

Here, as described above, the Complaint lacks any allegations of future harm stemming from AHCA's definition of medical necessity, much less any allegations of future harm that is substantially likely to occur in the immediate future for either W.B. or A.W. or the millions of other Medicaid-eligible children W.B. and A.W. purportedly represent. At best, Plaintiffs' threat of future harm is uncertain; A.W.

11

and W.B. may never be denied EPSDT services for reasons that are inconsistent with federal law in the future. Many other Medicaid-eligible children have never been impacted and may never be impacted by the provisions of AHCA's definition of "medical necessity" that are alleged to be unauthorized. Instead, the Complaint is solely focused on a generalized assertion that AHCA's definition is unlawful. This Court cannot hold that Plaintiffs have Article III standing to proceed with this claim without breaking with binding Eleventh Circuit precedent—*31 Foster Children*—and the consistent line of cases cited above.

## CONCLUSION

For the foregoing reasons, AHCA respectfully request that the Plaintiffs' Complaint be dismissed.

DATED this 23rd day of November, 2021.

> Respectfully submitted,
> /s/ *Erik M. Figlio*
> Erik M. Figlio
> Florida Bar No.: 0745251
> Alexandra E. Akre
> Florida Bar No.: 0125179
> Ausley McMullen
> 123 South Calhoun Street (32301)
> Post Office Box 391
> Tallahassee, Florida  32302
> Phone No.:  (850) 224-9115
> Facsimile No.:  (850) 222-7560
> rfiglio@ausley.com
> csullivan@ausley.com
>
> ATTORNEYS FOR DEFENDANT

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing has been filed electronically via the CM/ECF System on this 23rd day of November, 2021.

/s/ *Erik M. Figlio*
Erik M. Figlio